[No. 11386.   Department One.   May 16, 1914.]

SCANDINAVIAN AMERICAN BANK OF TACOMA, *Respondent*. v.

PUGET SOUND MACHINERY DEPOT, *Appellant*.[1]

FRAUD—MISREPRESENTATIONS—EVIDENCE—SUFFICIENCY.   Findings that money paid to defendant on an assignment of a conditional sales contract was secured by fraud are sustained, where it appears that machinery had been sold by the defendant to a bankrupt, on the conditional sales contract, the full purchase price not being paid, and the plaintiff having an inferior lien on the property, negotiations were had looking to the plaintiff's paying the balance due on defendant's lien and taking the property, that the defendant falsely represented the balance due to the extent of $504.40, including the amount of other unsecured claims of the defendant against the bankrupt, knowledge of which was suppressed, and that plaintiff relied on the representations, after asking for a guaranty that the sum was due on the contract, which defendant assented to, and added to the assignment, in pencil, the words "which is guaranteed the balance due from the above named company."

CHADWICK, J., dissents.

Appeal from a judgment of the superior court for King county, Myers, J., entered January 4, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for money paid. Affirmed.

*Ira Bronson*, for appellant.

*J. A. Sorley* and *C. L. Baxter*, for respondent.

GOSE, J.—This action was brought to recover a judgment for money paid to the defendant in consequence of its alleged fraudulent representations.

[1]Reported in 140 Pac. 901.

On the 15th day of April, 1910, the appellant sold to
Nelson-Johanson Mill Company, a corporation, hereafter
called the mill company, upon a conditional sale contract, one
pair of twin engines with complete equipment, for an agreed
consideration of $2,150; $537.50 cash, the balance payable
in five monthly installments of $322.50 each, evidenced by
interest-bearing notes. The contract provided that, if the
vendee failed to make any payment when it became due, the
payments theretofore made should be deemed rental, and the
"contract of conditional sale shall be forfeited and determined
at the election" of the vendor. The vendee installed the en-
gines in its sawmill near Tacoma. The respondent had mort-
gages upon all the property of the mill company, both real
and personal, including the engines, to the extent of the full
value of all of its property. On the 8th day of September,
1910, the mill company was adjudged a bankrupt and its
property passed into the hands of a trustee. On the 28th
day of December, 1910, the last two installments, aggregat-
ing, with interest, $681.55, were due and unpaid. On that
day, the appellant assigned its conditional sale contract to
the respondent and received as a consideration $1,185.95.
When the assignment was presented to the appellant, and be-
fore its delivery, the following words were added in pencil:
"which is guaranteed the balance due from the above men-
tioned company." At the time of the assignment, the mill
company owed the appellant upon a note and an account
which were unsecured a sum equal to the difference between
$681.55 and $1,185.95, that is, $504.40. The respondent
sued for this difference, alleging that it purchased the engines
for the balance due upon the conditional sale contract, which
the appellant falsely and fraudulently represented to be
$1,185.95, when in truth and in fact it amounted to only
$681.55.

The court found the facts in favor of the respondent, and
entered a judgment in its favor for the amount claimed. The
court expressly found that the mill company had no property

or assets of any kind with which to pay any part of the claims
of the general creditors.  This finding is conceded to be true
by both parties.  It also found, that the respondent, in
order to retain the engines in the mill, agreed to pay the ap-
pellant the balance due and owing upon the conditional sale
contract; that the appellant agreed to assign the contract
to the respondent for such balance; that the appellant repre-
sented and warranted to the respondent that the balance due
and owing upon the conditional sale contract was $1,185.95,
when in truth and in fact the balance, including principal and
interest, was $681.55; that respondent, relying upon the rep-
resentations and believing them to be true "and not other-
wise," paid the appellant the sum of $1,185.95.  The court
deduced, as a conclusion of law, that the respondent was en-
titled to recover the amount paid to the appellant in excess
of the amount actually due upon the conditional sale con-
tract.

The respondent was required to sustain its allegations of
fraud by clear and convincing evidence.  We think that it
did so.  In fact, the evidence as we read it is overwhelming
in support of the findings of the court.  Prior to the ex-
ecution and delivery of the assignment, a representative of
the appellant wrote the respondent that it had a conditional
sale agreement upon the engines, that it expected this claim
to be paid in full, that it was entitled to take the machinery,
and that it desired to avail itself "of that course unless we  ·
can obtain the money in full settlement of our claim," and
that it was unwilling "to take the chances of securing a pur-
chaser [meaning at a trustee's sale] who will pay enough to
liquidate all the preferred claims."  In other correspondence
it referred to this conditional sale contract and to its pre-
ferred claim.  It mentioned no other claim.  On the day the
conditional sale contract was assigned, representatives of
the appellant met with representatives of the respondent,
and the only question discussed was the conditional sale con-
tract and the amount due upon it.  When the assignment of

the contract was presented to the representative of the respondent who closed the deal in its behalf, he requested the appellant's representative to insert a guaranty in the assignment that the $1,185.95 was the amount due upon the contract. In response to this request he wrote the penciled quotation. As we have said, the appellant at no time suggested its unsecured claims. The parties were negotiating concerning the conditional sale contract as a preferred claim.

It is argued that, because the engines as installed in the mill were worth more than the amount received as a consideration for the assignment, the respondent was not injured, and that, in view of the fact that the appellant had the right at its election to remove the machinery, there can be no recovery. These suggestions are beside the question. We need not determine whether the appellant could have exercised its option to remove the machinery. It had not exercised it, and the correspondence and the oral testimony show conclusively that it did not desire to exercise it. It obtained the difference between the amount due upon the contract and the amount which it received either by false representations, or by a suppression of the truth, which was equivalent to a suggestion of falsehood. In either case, its liability is complete.

The judgment is affirmed.

CROW, C. J., and MAIN, J., concur.

PARKER, J. (concurring)—I am of the opinion that respondent's interest in the mill was such as gave it the right to have the engines remain in and a part of the mill by paying to appellant the balance due it upon the conditional sale contract, whether appellants consented thereto or not; since appellant had not at that time, as I view the situation, effectively exercised its right to reclaim the machinery. Until it did so, the mill company, the vendee under the conditional sale contract, could retain the machinery and consum-

mate the conditional sale by paying the balance due thereon. Respondent, I think, stood in the shoes of the mill company and could therefore exercise the same right until that right was terminated by the actual reclaiming of the property by appellant under the conditional sale contract. The fraud consisted in appellant's inducing respondent to pay more than the balance due upon the conditional sale contract to secure the right it had to have the engines remain in the mill, upon payment of the actual balance due on the conditional sale contract, a right which was not dependent upon the will of appellant. When respondent offered to pay the balance so due, appellant was bound to state the truth as to the balance due thereon and accept payment thereof. Any amount paid by respondent to appellant in excess of the true balance due, even through honest mistake, would be recoverable by respondent. I concur upon this ground.

CHADWICK, J. (dissenting)—As I read the record, the appellant is entitled to a judgment of dismissal as upon an executed contract by the Scandinavian American Bank of Tacoma to pay the sum of $1,185.95; or there was no contract for the reason that the minds of the parties never met. I have gone through the record in this case, and I find nothing that in my judgment warrants the conclusion of the court below, and of the majority, that the appellant represented and warranted to the respondents that the balance due and owing upon the conditional sale contract was $1,185.95, or that any proof was suppressed or falsehood suggested. In fact, all of the concomitant circumstances makes it plain to me that the parties must have contracted with reference to the whole amount due from the machinery company to the appellant. Without discussing the testimony at length, it is enough to say that appellant had a conditional sale contract for the machinery; that there was a balance due of $681.55, and that the machinery company was owing $504.40 upon an open account. Appellant had a legal right to

take the machinery without reference to the amount of the balance due. The machinery exceeded in value the sum of $1,185.95. There is direct evidence to sustain this conclusion, and the fact that respondent was willing to pay that amount makes it incontrovertible. It is highly improbable that appellant would deliberately release a hold that it had upon the property, and which, if exercised, would have more than paid its whole debt, and content itself with the loss of half the amount which was its due. The assignment of the conditional sale contract, with the amounts and dates of the payments due, was, in the absence of anything else, sufficient to put respondent upon inquiry. The insertion of the words "which is guaranteed the balance due from the above mentioned company," after the typewritten body of the contract which contained the recitals "for and in consideration of the sum of $1,185.95, we hereby sell, etc., all our right, title and interest in and to one pair 17x22 inch, Class EE Atlas Engine, etc., together with our right, etc., in a certain conditional sale contract," is enough to bind the respondent. The parties used the figures $1,185.95 without qualification. The words guaranteeing that sum to be the balance due, without reference to the amount due upon the conditional sale contract, indicates to my mind that the parties had a perfect understanding at the time that the respondent was willing to and did pay the sum of $1,185.95 for the engine, with the expectation and intent of making a profit to itself over and above that sum, and that it would not have paid that amount if it had not considered it to be a profitable venture. Moreover, if the parties had contemplated a transfer of the conditional sale contract for the amount due thereon, a simple assignment of it would have been enough without making a formal bill of sale of the engine. Upon its findings of fact, the court below, as well as the majority, have convicted the representatives of the appellant, whose only offense has been to give up nearly $1,-200 worth of property for about $600, of being knaves. If

they did what the majority say they did, they were not knaves. They lack the understanding and cunning of knaves and should be classed as fools.

Respondent has not only failed to make out a case of fraud by the clear and convincing evidence required by the law, but it has failed, in my judgment, to make a case at all. I am inclined to believe, and it is the more reasonable theory, that both parties acted in good faith. The bank may have thought it was purchasing the engine for the amount due upon it. It is certain to my mind that appellant never intended to sell upon those terms. A proper holding would be that the minds of the parties never met, and that the transaction lacks this essential element of a contract.